**DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-00619

TEGRITY CARROLL, BABATUNDE ELEBE,
and ANTHONY HAMRICK,

     Plaintiff,

v.

SCHLUMBERGER TECH. CORP.,

     Defendant.

---

**UNOPPOSED MOTION FOR APPROVAL OF
CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE AND
DISMISSAL OF LAWSUIT WITH PREJUDICE**

---

Plaintiffs Tegrity Carroll, Babatunde Elebe, and Anthony Hamrick ("Plaintiffs") file this Unopposed Motion for Approval of Confidential Settlement Agreement and Release and Dismissal of Lawsuit with Prejudice ("Motion") and in support would show as follows:

**1. INTRODUCTION AND BACKGROUND**

    **1.1 THE ALLEGATIONS**

The claims at issue in this lawsuit are part of an earlier collective action that was ultimately decertified and in which the opt-in plaintiffs were dismissed without prejudice. *Sanchez, et. al. v. Schlumberger Tech. Corp.*, No. 2:17-cv-102, Doc. 199 (S.D.T.X. Jan. 30, 2020). Plaintiffs refiled their claims against Defendant Schlumberger Tech. Corp. ("STC") on March 4, 2020 in this Court. In the aggregate, this lawsuit alleges that STC misclassified Plaintiffs as independent contractors and paid

Plaintiffs a day-rate with no overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, 29 C.F.R. § 778.112 (the "Lawsuit").

### 1.2 SETTLEMENT

Subject to Court approval (of both the settlement and the confidentiality provisions), the Parties reached an agreement to resolve the unpaid overtime claims of the Plaintiffs. The scope of the settlement includes meaningful compensation for the three Plaintiffs, the terms of which are memorialized in the settlement agreement ("Agreement") which is attached in its entirety and has been filed under seal as Exhibit 1. If the settlement is approved by the Court, the allegations in the lawsuit will be resolved in their entirety.[1]

As discussed below, the Court should approve the Agreement because it represents a fair compromise of bona fide disputes concerning, among other things, whether STC misclassified the Plaintiffs as independent contractors. Indeed, over the life of this Lawsuit, the Parties—informally, formally, and through extensive subpoenas to third parties—exchanged extensive information and documents relating to STC's classification and compensation of the workers, investigated the supporting facts, and thoroughly studied and briefed the legal principles applicable to the claims and defenses asserted. Based upon the Parties' investigation, legal evaluation, and assessment of the numerous contested legal and factual issues involved in this Lawsuit, including Counsel's

---

[1] The Parties submit that, without confidentiality of the amounts in and the scope of the Agreement, there is an increased likelihood that STC would be exposed to further litigation (on claims that it denies), thus depriving STC of a benefit which was the basis for the settlement bargain. Plaintiffs also have an interest in not having their financial information posted in a public record. In addition, the publication of the Settlement Agreement is potentially harmful to STC's ongoing operations and its competitiveness in the marketplace. There is also a public interest in confidentiality in that it encourages and facilitates settlement negotiations and the voluntary resolution of disputes, thereby preserving the resources of the Court. Because all relevant information will be provided to any interested party, no potential claimant is disadvantaged by such confidentiality. As there is no prejudice arising from in camera review but great prejudice should such review be denied, it should be permitted. If the Court is disinclined to permit confidentiality, the Parties request that the Court redact the dollar amounts from the Agreement.

understanding of the uncertainties of litigation and the relative benefits conferred upon the Plaintiffs pursuant to the Agreement, Counsel has concluded that this settlement is fair, reasonable, adequate, and in the best interests of the Plaintiffs. Accordingly, Plaintiffs asks the Court to approve the Agreement, and to enter an order dismissing this Lawsuit with prejudice.

Because the terms of the Agreement are reasonable and fair to all parties involved, the Parties ask the Court to approve the Agreement, order the Parties to effectuate and comply with the terms of the Agreement, and enter an order dismissing this Lawsuit with prejudice.

**2.   SETTLEMENT TERMS**

   **2.1   GENERAL TERMS**

As set forth in detail in the attached Agreement, the Parties reached a settlement and the Plaintiffs have signed individual releases under the terms of the Agreement. The terms of the settlement, the scope of the release, the settlement amounts, and the steps following approval are contained within the Agreement and Releases.

Each Plaintiff's Settlement Payment is calculated based upon STC's records of the individual's compensation and weeks of service in the relevant position during the relevant time and are contained in the individual releases to the Agreement. The Plaintiffs will receive a pro-rata Settlement Payment based upon the alleged compensation owed and time worked during the relevant three-year time period. Settlement payments will be distributed by Counsel approximately sixty (60) days after all of the following have occurred, (1) approval of the Agreement by the Court, (2) dismissal of this Lawsuit with prejudice, (3) the submission of properly competed individual releases, W-4s and W-9 forms to STC.

In exchange for the Settlement Payment, the Plaintiffs have released the Released Parties from all claims asserted or that could have been asserted in this Lawsuit.

**3.   APPROVAL OF THE SETTLEMENT IS WARRANTED**

The Parties now seek Court approval of the Agreement. FLSA claims may be compromised after the court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Morton v. Transcend Servs., Inc.*, No. 15-CV-1393-PAB-NYW, 2017 WL 977812, at* 1 (D. Colo. Mar. 13, 2017) (citing *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "However, this extensive review of every FLSA settlement has never been required by the Tenth Circuit." *Lawson v. Procare CRS, Inc.*, No. 18-CV-00248-TCK-JFJ, 2019 WL 112781, at *2 (N.D. Okla. Jan. 4, 2019) (collecting cases). "Moreover, though Tenth Circuit district courts are split regarding the application of *Lynn's Food Store* in this circuit, the majority of districts … have held that such approval is not necessary." *Id.* (collecting cases).

"Parties requesting approval of an FLSA settlement must provide the court with sufficient information to determine whether a bona fide dispute exists." *Morton*, 2017 WL 977812, at *1 (citing *Deesv. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010)). The Parties may satisfy this burden by presenting evidence showing: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the Parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.*

The Agreement represents a fair compromise of several bona fide disputes concerning the legality of STC's compensation and classification practices with respect to the Plaintiffs.

**3.1   Description of the nature of the dispute.**

In the aggregate, this lawsuit alleges that STC misclassified Plaintiffs as independent contractors and paid Plaintiffs a day-rate with no overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, 29 C.F.R. § 778.112.

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). The FLSA is a broad remedial statute and it promotes a "great public policy" for the benefit of all workers within its reach. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

Here the Parties disputed whether the economic realities factors present in this case would show as a matter of law that the Plaintiffs were employees. On one hand, Plaintiffs claimed that they were agents of STC, who worked almost exclusively on STC projects, while following STC's practices, procedures, schedules, well plans and directions. On the other hand, STC claimed that the Plaintiffs were highly-skilled workers, who worked independently, and held themselves out as independent contractors both to STC and different federal agencies. Some were short-term contractors with their own business, others had their own businesses but worked exclusively or for long periods of time at STC. The list of disagreements concerning the economic realities of the workplace is meaningful and reflects the existence of a bona fide dispute (or several) concerning the employee status of the workers.

While both Parties were steadfast in their respective positions, the inherent risks of liability or no liability motivated the Parties to resolve their differences. The product of this careful analysis and sometimes exhaustive deliberations is the reasonable Agreement before this Court.

Before reaching a compromise, the Parties expended considerable time debating the relevant legal issues, compiling/reviewing damage data and working through issues relevant to the nature and scope of the release. The Parties conducted an in-depth analysis of the potential damages, interviewed

witnesses, and investigated the business practices at issue. The Parties also engaged in substantial negotiations to reach the compromise before this Court.

### 3.2 A description of the employer's business and the type of work performed by the employees.

Defendant STC is one of the largest oilfield service providers in the world. Plaintiffs performed various duties relating to the overall drilling of STC's and its clients' oil wells. Specifically, Plaintiffs operated the "measurement while drilling" tool and software during the drilling phase of the extraction process.

### 3.3 The employer's reason for disputing the employees' right to overtime.

STC denied the allegations in the Lawsuit and asserted affirmative and other defenses, including that Plaintiffs were not employees of STC (and instead were independent contractors) and that even if they were employees, they were properly classified as exempt. STC further argued that it acted in good faith with respect to its practices and denied that any violation of the FLSA was willful. STC also disputed the damages at issue by questioning the hours worked, the total compensation received and work weeks at issue.

### 3.4 The employees' justification for the disputed wage.

Plaintiffs argued that the compensation they received—pay on a day rate basis—failed to satisfy the salary basis test which precluded the application of any exemptions from the overtime requirements. *See Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183, 191 (6th Cir. 2017) (whether a worker receives a "guaranteed" salary "does matter" and is a prerequisite to a white collar exemption defense).[2] Plaintiffs also alleged that STC did not act in good faith in classifying Plaintiffs as contractors and that the pay practice at issue constituted a willful violation of the FLSA.

---

[2] Plaintiffs also alleged that STC could not meet the reasonable relationship test set for in 29 C.F.R. §541.604.

### 3.5     If the Parties dispute the computation of wages owed, each party's estimate of the number of house worked and the applicable wages.

To begin, while the FLSA usually has a statute of limitation of two years, willful violations of the FLSA extend that period, resulting in "an additional year's overtime pay." *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 355 (5th Cir. 1990) (discussing 29 U.S.C. § 255). Plaintiffs have the burden to prove a willful violation. *Id.* at 356. "Willful" is defined as whether "the employer knew or showed *reckless disregard* for the matter of whether its conduct was prohibited by statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

As with many FLSA independent contractor cases, the issue of damages—two-year v. three-year—was hotly contested in this lawsuit. STC claimed that is compensation practices were reasonable, based on established industry practices and not in willful violation of the FLSA. Unlike certain competitors of STC, this is not a company with a lengthy history of FLSA violations, prior Department of Labor investigations or other evidence that suggested reckless conduct. While Plaintiffs are confident that additional discovery would have vigorously tested all STC's defenses, the threat of a summary judgment on willfulness could not be ignored for purposes of reaching a settlement in this case.

Had STC succeeded on this defense, the claims of the Plaintiffs would have been wiped out or severely reduced. Equally as consequential, a finding of no willfulness would have reduced the potential damages at issue by over 50%. Thus, the existence of a bona fide dispute on the third-year damages in this case was meaningful and relevant to the Parties' settlement discussions.

The Parties also had other disagreements about the facts and the law which impacted settlement discussions and highlight the bona fide nature of the dispute. As an example, the hours worked by the Plaintiffs was a subject of disagreement. Neither STC nor the Plaintiffs maintained accurate records of hours worked each week. Similarly, while the Parties had records of weeks worked,

the records did not always reveal when the work week started. Thus, the issue of whether the Plaintiffs worked 84 hours or more was vigorously contested.

**4.     APPROVAL OF ATTORNEYS' FEES, COSTS AND SERVICE AWARD IS WARRANTED**

Plaintiffs' attorneys seek 35% of the Gross Settlement Amount for attorneys' fees and costs for the time, expense and worked performed in prosecuting the case on behalf of the Plaintiffs. In a reduction from the governing contingency fee agreement, the Parties agreed set Plaintiffs' Counsel fees at 35% of the gross settlement amount and this is the agreement the Parties have presented to the Court for approval. *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed.").

In this case, the attorneys' fees sought are warranted under the circumstances. Not only does the settlement represent a significant benefit to the Plaintiffs in the face of the many legal and factual risks posed by litigation, but it also guarantees payment without years of protracted litigation. Further Counsel assumed a very real risk in taking on this case. Counsel took the case on a contingency basis, and invested time, effort, and money over a period of years with no absolutely no guarantee of any recovery. Based on the quality of the result achieved, the difficulties faced, the efficiency of the recovery, the standing, experience and expertise of the counsel, coupled with the recognition that 35% is in line with other settlements approved by courts in this Circuit, the Court should approve an award of 35% in this case.

**4.1     The Fee Award Is Reasonable and Should be Approved.**

An award of attorneys' fees under the FLSA is **mandatory**, and district courts generally only examine (at most) whether the fee award in an FLSA settlement agreement is reasonable. *See Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 415 n.5

(1978) (an award of fees and costs is "mandatory for prevailing plaintiffs" in FLSA actions); *Olivo*, 526 Fed. Appx. at 854 ("As prevailing parties on this claim, plaintiffs were entitled to an award of attorney's fees under 29 U.S.C. § 216(b)"); *Weiser v. Pathway Servs. Inc.*, No. 17-CV-673-GKF-FHM, 2019 WL 6723563, at *1 (N.D. Okla. Aug. 26, 2019) (same); *Ali v. Jerusalem Restaurant, Inc.*, No. 14-CV-00933-MEH, 2015 WL 1345326, at *5 (D. Colo. Mar. 23, 2015) (same). An award is reasonable if it is "adequately compensatory to attract competent counsel yet which avoids a windfall for lawyers." *Hensley*, 461 U.S. at 437.

While the Tenth Circuit applies a hybrid approach in determining the reasonableness of fees in common fund cases, the customary fee award is typically derived from a percentage of the settlement fund recovered. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995). "The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when Counsel is retained on a contingent fee basis, as in this case." *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 484 (10th Cir. 1998); *see Uselton v. Com. Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993); *Lucken Family Ltd. P'ship, LLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *2 (D. Colo. Dec. 22, 2010). In common fund cases, utilizing the percentage method to calculate attorney fee awards is the standard. *See Gottlieb v. Barry*, 43 F.3d 474, 482-83 (10th Cir. 1994). The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of Counsel "as to their expected recovery," and encouraging early settlement before substantial fees and expenses have been accumulated.

*Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010).

In assessing the reasonableness of attorney fee awards in collective actions, some courts within the Tenth Circuit have considered twelve factors identified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *5 (D. Colo. Nov. 13, 2013). Rarely are all *Johnson* factors applicable. *Id.*

Considering the circumstances presented herein, Counsel's requested attorneys' fees and litigation expenses are imminently reasonable as both as a percentage of the total common settlement fund and under the *Johnson* factors.

### 4.1.1 FLSA Collective Actions are Inherently Complicated, and Counsel is Experienced and Skilled in Handling the Same (Factors 3-4 and 9-10).

Cases involving employee overtime rights are governed by highly technical and specialized state and federal wage statutes and regulations. Three fundamental questions governed this case: (1) whether the Plaintiffs were improperly classified as independent

contractors; and (2) whether Plaintiffs were exempt employees. Analysis of these questions and effective prosecution of these claims required not only extensive knowledge of applicable caselaw and regulations, but also insight on successfully litigating cases under the FLSA.

Counsel's skill, knowledge, reputation, and experience (factors 2, 3, and 9) are well-recognized in FLSA cases such as this. *See*, *e.g.*, *Roussell v. Brinker Int'l, Inc.*, 09- 20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011) (affirming jury verdict in FLSA collective action); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006) (affirming summary judgment in favor of a nationwide class of FLSA plaintiffs); *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183 (6th Cir. 2017) (reversing trial court's grant of summary judgment). FLSA collective action cases such as this are the main focus of Counsel's docket. Although Counsel is based in Texas, both Josephson Dunlap, LLP and Brucker Burch, PLLC have a national docket of FLSA cases, with litigation across the United States, not only in Texas, but also in Alaska, Arizona, California, Colorado, Florida, Georgia, Illinois, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, New Mexico, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, Virginia, Washington, West Virginia, Wyoming, and elsewhere. Ex. 2 at ¶¶ 4-8. In recent years, Counsel's joint docket has carried around or over 250 cases involving FLSA collective action claims for oilfield workers, such as this case. *Id.*

Counsel's experience has caused it to review and become familiar with a large body of documents and information concerning FLSA litigation, which benefits cases such as this and maximizes the settlement value of the case. *Id.* Counsel's experience in this field has also resulted in a familiarity with the evidence and testimony necessary to the successful

prosecution of FLSA collective actions, such as this. Indeed, as one court has expressly noted, "the firms involved in this case on the Plaintiffs' side are **among the most experienced and best regarded in this specialized practice area**." *Kurgan v. Chiro One Wellness Ctrs., LLC*, No. 10-CV-1899, 2015 WL 1850599, at *4 (N.D. Ill. Apr. 21, 2015) (emphasis added); *see also Horton*, 455 F. Supp. 3d at 207 (finding attorneys at Josephson Dunlap and Bruckner Burch "conduct[] themselves professionally, demonstrate[] deep knowledge of wage-and-hour law, and [are] diligent and responsive to the Court's orders.").

Although FLSA cases are not novel, FLSA work is a specialized area of law where extra skill is needed to litigate, especially in a case such as this that began as a single plaintiff with a complaint against a large oilfield organization which blossomed into a case with over 1,000 Settlement Class Members. *Whittington*, 2013 WL 6022972, at *6; *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013) ("wage and hour collective and class actions are, by their very nature, complicated and time-consuming"). In addition to the number of potential Settlement Class Members, resolving the procedural issues, the merits, and calculating damages is inherently risky, costly, and time-consuming. *See Whittington*, 2013 WL 6022972, at *6.

As courts in this Circuit have noted, attorneys handling such large classes are precluded by the ticking clock from taking other cases (factor 4), given that counsel took a chance on a possible recovery in a contingent fee case rather than strictly working on an hourly basis. *Id.* As set forth below, Counsel spent significant time and incurred out-of-pocket expenses, remuneration for which was entirely contingent on the outcome of the matter, thus making this case relatively undesirable (factor 10). *See Aragon v. Clear Water Prod. LLC,* No. 15-CV-

02821-PAB-STV, 2018 WL 6620724, at *6 (D. Colo. Dec. 18, 2018). Indeed, the possibility existed in this case that no recovery would be made for the time and efforts exerted by Counsel.

### 4.1.2 The Time and Labor Required was Substantial and Counsel's Requested Costs are Reasonable (Factors 1 and 7).

Regarding the time and efforts required of Counsel (factors 1 and 7), these claims have been pending for over three years. During this time, Counsel, with the assistance of 7 lawyers, two law firms and multiple staff members performed extensive work. During the time that these claims have been pending against STC, both in the prior collective action and in the current case before the Court, the Parties have briefed dozens of motions, conducted over thirty depositions, engaged in numerous discovery disputes, conferences, and hearings. *Id.* at ¶¶ 9-13. The time expended dwarfs the recovery of fees in this case and this represents a significant amount of time expended to reach resolution of this case.

### 4.1.3 THE COSTS ARE REASONABLE

In addition to being entitled to reasonable attorneys' fees, the relevant wage and hour law provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b) ("worker may recover in a civil action the full amount of such minimum wage less any amount actually paid to the worker by the employer, together with costs and such reasonable attorney's fees as may be allowed by the court…").

To-date Counsel has incurred $733.24 in unreimbursed costs. *Id.* at ¶ 27. "Expenses are compensable in a common fund case if the particular costs are the type typically billed by attorneys to paying clients in the marketplace." *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okla.*, 8 F.3d 722, 725-26 (10th Cir. 1993). Here, Counsel's costs include reasonable out-of-pocket expenditures such as Court costs and filing fees, photocopying and

duplication, *Id.* These are the types of costs normally billed to clients. *See Aragon*, 2018 WL 6620724, at *7; *In re Crocs, Inc. Sec. Litig.*, No. 07-CV-02351-PAB-KLM, 2014 WL 4670886, at *5 (D. Colo. Sept. 18, 2014). These expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Agreement, STC does not object to the request for costs. *See* Ex. 1.

Here, the Parties have agreed to an amount designated for costs in the settlement agreement. Counsel's costs include reasonable out-of-pocket expenditures such as filing fees, records, copies, postage, travel, three mediations, meetings, and PACER/Westlaw. All of these expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Agreement.

### 4.1.4 Counsel Represented Plaintiffs on a Contingency Basis (Factors 5, 6, 10, 12).

Next, while the separately negotiated, agreed contingency fee (factors 5, 6, 10, and 12) in the Professional Services Agreement between Plaintiffs and Counsel provides for a contingency fee of 40% of the gross settlement amount, Counsel is seeking a reduced 35% of the gross settlement amount. Counsel, working on contingency, had 100% of the risk of loss, advanced considerable costs, which if not recovered, would be lost, and Counsel would have carried various advanced costs, as well as unrecoverable time spent. Ex. 2 at ¶ __. Counsel assumed an enormous risk prosecuting this matter since there was a possibility of no recovery. *Id.*

Courts have consistently found this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award. *See, e.g.*, *Aragon*, 2018 WL 6620724, at *6; *Shaw,* 2015 WL 1867861, at *4. The "process

of reviewing and approving stipulated attorneys' fees in the event of a settlement [of FLSA claims] **is more deferential than resolving attorneys' fees in a disputed case**." *Melgar v. OK Foods*, 902 F.3d 775, 779-80 (8th Cir. 2018) (emphasis added). In particular, "where the parties have already agreed upon the fees to be paid, any required review need not be a line-by-line, hour-by-hour review of the attorneys' fees." *Id.* at 779. To the contrary, the review of FLSA "attorneys' fees included in a settlement agreement **requires … deference** by the district court to the parties' agreement." *Id.* (emphasis added).

### 4.1.5 Counsel's Requested Fee is Within the Customary Range (Factors 5, 6, 12).

Counsel's request for attorneys' fees in the amount of 35% of the Gross Settlement is well within the range of reasonableness for contingency fee cases in this Circuit. As some courts have noted, the "customary contingency fee" awarded to Counsel in a common fund FLSA collective action settlement such as this is approximately 30-40 percent. *See, e.g.*, *Ostrander*, 2019 WL 764570 *6 ("fees have ranged from 4 per cent to 58 per cent" of settlement fund); *Davis*, 292 F. Supp. 3d at 1174 (approving a fee award for 37% of the gross settlement amount and finding it "well within the normal range for a contingent fee award"); *McKinley*, No. CIV-14-649-M, ECF 48 (W.D. Okla. Mar. 2, 2016) (approving fee award of 40% of gross settlement fund); *Cimarron Pipeline Construction, Inc. v. National Council on Compensation,* Nos. CIV 89-822-T, CIV 89-1186–T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (noting "[f]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); *see also Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (finding the "customary contingency fee" within the range of 35% to 40%). The percentage requested here falls with the same range. *Id.*

In regard to the undesirability of the case (factor 10), as referenced above, Counsel took this case on a contingency basis during a lull in the oil and gas industry. This slowed down the FLSA collective action process and created additional research and expenses. It could also increase both Parties' expenses in this matter if the Settlement Agreement is not approved. Lastly, this case involves disputes related to the independent contractor and exemption classifications of Plaintiffs, which make litigation highly fact intensive.

### 4.1.6    Degree of Success Obtained is High (Factor 8).

Finally, "the most critical factor in determining a fee award is the degree of success obtained". *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003). The degree of success here is high because STC vigorously contested Plaintiffs' claims and denied that these Plaintiffs were improperly paid, improperly classified, underpaid, that any alleged damages are owed, and that it acted willfully. The recovery of their *pro rata* settlement amounts represents a significant recovery for Plaintiffs.

### 5.  **CONCLUSION**

The Parties believe that the terms and conditions of the Agreement are fair, reasonable, adequate, and in the best interests of all Parties.  As noted above, this proposed Agreement was reached following the exchange of information and data and after extensive negotiations.  Because of the various defenses asserted by STC and the possibility that STC may have successfully defeated or limited some or all of the Plaintiffs' claims, including those claims related to willfulness, liquidated damages, and compensation for unpaid overtime, the Parties believe that the settlement represents a fair compromise of a bona fide dispute. Moreover, given the strong likelihood that absent a settlement, this case would have proceeded to trial, a compromise of the claims prevents all Parties from incurring the additional costs and delay associated with trial and possible appeal.

The Parties hereby requests that the Court: (1) approve this settlement, including all of the terms set forth in the Agreement; (2) allow the Agreement and all related documents to be filed under seal; (3) direct the Parties to implement and complete the funding as set forth in the Agreement; and (4) dismiss this lawsuit and the claims of Plaintiffs with prejudice.

Respectfully Submitted,

By: */s/William R. Liles*
**Michael A. Josephson**
Texas Bar No. 24014780
**William R. Liles**
Texas Bar No. 24083395
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
wliles@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

On April 23, 2021, I served a copy of this document on all registered parties and/or their counsel of record, via the Court's CM/ECF system.

*/s/William R. Liles*
William R. Liles